Michael J. Nader, SBN 200425
michael.nader@ogletree.com
Elizabeth D. Rhodes, SBN 218480
elizabeth.rhodes@ogletree.com
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
500 Capitol Mall, Suite 2500
Sacramento, CA  95814
Telephone:	916-840-3150
Facsimile:	916-840-3159

Attorneys for Defendant
GAMESTOP, INC.

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALYSSA COULTER, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>GAMESTOP INC., a Minnesota Corporation; and DOES 1-50, inclusive,<br><br>Defendants. | Case No.<br><br>**DEFENDANT GAMESTOP, INC.'S NOTICE OF REMOVAL TO FEDERAL COURT**<br><br>[Filed concurrently with Civil Case Cover Sheet; Declarations of Ariel Kumpinksy, Mark H. Robinson and Heather Toro; Disclosure Statement Pursuant to Federal Rule of Civil Procedure 7.1]<br><br>Butte County Superior Court<br>Case No. 23CV00760<br><br>Action Filed:  March 23, 2023 |

**TO THE CLERK OF THE UNITED STATES DISTRICT COURT, EASTERN DISTRICT OF CALIFORNIA, PLAINTIFF AND HER ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that Defendant Gamestop, Inc. ("Defendant"), through undersigned counsel, hereby removes the above-captioned action from the Superior Court of the State of California for the County of Butte, to the United States District Court for the Eastern District of California, pursuant to 28 U.S.C. §§ 1332, 1441, 1446 and 1453.

**I.	PROCEDURAL BACKGROUND AND TIMELINESS OF REMOVAL**

1.	On March 23, 2023, Plaintiff filed an unverified Class Action Complaint in the Superior Court of the State of California, County of Butte, commencing the action entitled "*Alyssa*

*Coulter* v. *Gamestop, Inc.*, Case No.: 23CV00760 ("Complaint"). A true and correct copy of the Complaint is attached as **"Exhibit A"** to this Notice of Removal. The Plaintiff's Complaint asserts claims for: (1) failure to pay all overtime wages; (2) meal period violations; (3) rest period violations; (4) failure to pay all sick pay wages; (5) wage statement violations; (6) late payment of wages; (7) waiting time penalties; and (8) violations of Business & Professions Code § 17200 *et seq*.

2. Defendant's registered agent for service of process was served with the Complaint on April 6, 2023. True and correct copies of the documents served on Defendant's registered agent are attached to this Notice as **"Exhibit B."** On May 4, 2023, Defendant timely filed an answer to Plaintiff's Complaint. A copy of the Answer is attached as "**Exhibit C.**"

3. The time to remove under 28 U.S.C. section 1446(b) does not begin to run until receipt by the defendant, through service or otherwise, of a pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable. *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 694 (9th Cir. 2005) ("*Harris*"). In *Harris,* the Ninth Circuit held that defendants have no obligation to investigate or develop additional information as to removability. *Id.* at 694 ("[N]otice of removability under 1446(b) is determined through examination of the four corners of the applicable pleadings, not through subjective knowledge or a duty to make further inquiry" by the defendant). In *Kuxhausen v. BMW Fin. Servs. NA LLC*, 707 F.3d 1136 (9th Cir. 2013), the Ninth Circuit reinforced its decision in *Harris* regarding the duty to investigate removability, finding that defendants are not "saddl[ed] with the burden of investigating jurisdictional facts" to ascertain removability. *Kuxhausen*, 707 F.3d at 1139.

4. Following *Harris* and *Kuxhausen*, the Ninth Circuit further declared that a defendant does not have an affirmative duty to investigate whether a case is removable upon receiving the complaint, nor is it required to engage in guesswork regarding removability. *Roth v. CHA Hollywood Med. Ctr., L.P.,* 720 F.3d 1121, 1125 (9th Cir. 2013). District courts have subsequently followed this Ninth Circuit precedent: "The crux of Plaintiff's argument for remand—that Defendant could have removed earlier based on information contained in its own

records—is thus contradicted by Ninth Circuit case law." *Jakuttis v. Allstate Indem. Co.,* No. EDCV 15-0624 JGB (KKx), 2015 WL 3442083, at *4 (C.D. Cal. May 27, 2015). "Regardless of when [the defendant] learned the parties were diverse, their notice of removal was timely under 28 U.S.C. § 1446(b)(3) . . ." *Vigil v. Waste Connections, Inc.,* No. 2:14-cv-02383-KJM-CKD, 2015 WL 627877, at *4 (E.D. Cal. Feb. 11, 2015).

5. Here, the four corners of the Complaint do not provide readily ascertainable grounds for removal. The Complaint does not allege sufficient facts to calculate the amount in controversy with reasonable certainty as to the individually named plaintiff or as to the putative class. Accordingly, the time to remove this action has not yet begun. Where the time to remove has not yet expired, a defendant may remove at any time if it uncovers evidence establishing that the case is removable. *Roth*, 720 F.3d at 1125.

## II.   PLAINTIFF'S COMPLAINT IS REMOVABLE PURSUANT TO CAFA

6. As set forth below, Plaintiff's claims as alleged in the Complaint are removable under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d).

7. Under CAFA, the Federal District Court has jurisdiction if:

 a) There are at least 100 class members in all proposed plaintiff classes; and

 b) The combined claims of all class members exceed $5 million exclusive of interest and costs; and

 c) Any class member (named or not) is a citizen of a different state than any defendant. 28 U.S.C. §§ 1332(d)(2), 1332(d)(5)(B) and 1453(a).

### A.   There Are At Least 100 Class Members in the Proposed Class.

8. Plaintiff expressly purports to bring this action on behalf of the following "classes":

(1) All non-exempt employees who worked for Defendants in California, and who was paid any sick pay wages during the four years immediately preceding the filing of the Complaint through the date of trial. ("Class");

(2) All non-exempt employees who worked for Defendants in California and who worked overtime hours during at least one shift, during the four years immediately preceding the filing of the Complaint through the date of trial. ("Overtime Subclass");

(3) All non-exempt employees who worked for Defendants in California, during the one year immediately preceding the filing of the Complaint though the date of trial (Wage Statement Subclass") and

> (4) All non-exempt employees who worked for Defendants in California, and who have left Defendants' employ during one year immediately preceding the filing of the Complaint through the date of trial. ("Waiting Time Penalty Class") (Collectively "Classes").

(Exh. A, p. 8, ¶ 28, subparagraphs (1) – (4)).[1]

Clearly, none of the subclasses alleged above include a class concerning allegations about violations of the meal and rest break statutes. This appears to be an error in the allegations, because the Second and Third Causes of Action allege meal period violations and rest period violations, respectively. (Exh. A, pp.12-13, ¶¶67-75). For that reason, defendant, for purposes of this removal, makes the reasonable inference that there is alleged a fifth class asserted for meal and rest break violations.

9. Plaintiff alleges that "[t]he members of the Classes are so numerous that joinder of all members would be unfeasible and not practicable." (Exh. A, p.8, ¶ 29). Based on a review of Defendant's business records, 7136 individuals were identified as hourly employees at Defendant's retail centers within the State of California (collectively referred to as the **"putative class members"** or **"PCMs"**) at some time during the period from March 23, 2019 to March 23, 2023, (the "**Relevant Period**").[2] (Declaration of Ariel Kumpinsky ("Kumpinsky Decl."), ¶ 7). With 7,136 PCMs, the first requirement of CAFA jurisdiction is satisfied.

**B.    The Requisite $5 Million Amount In Controversy Is Satisfied.**

10. CAFA authorizes the removal of class-action cases in which the amount in controversy for all class members exceeds $5 million.[3] 28 U.S.C. § 1332(d).

---

[1] For clarity's sake, there are paragraph numbering errors in the operative Complaint. The Complaint begins with Paragraphs 1 through 34, and then skips to Paragraphs 61 through 80, and ends with Paragraphs 55 through 76. Therefore, page numbers are also cited to avoid confusion.

[2] Defendant acknowledges that the relevant "statutory" period is from March 23, 2019 until present. Because of the need to review the data for this Notice of Removal by a date certain, Defendants have designated March 23, 2019 until March 23, 2023 as the "Relevant Period" for purposes of this Notice of Removal.

[3] For purposes of effecting removal pursuant to 28 U.S.C. § 1332(d), declarations from Defendant and their counsel constitute sufficient evidence to establish the amount in controversy. *See e.g.*, *Muniz*, 2007 WL 1302504, at *2, *5 (relying on the evidence submitted by the defendant in the form of a declaration from its employee relations manager, which "set[…] forth the underlying facts needed to calculate the amount in controversy," and a declaration from its counsel, which calculated the amount in controversy based on the underlying facts and in light of the laws governing the plaintiff's claims, and finding that the defendant had shown that "it is more likely than not that the jurisdictional threshold of $5,000,000.00 is met"); *Jasso v. Money Mart Express, Inc.*, No. 11-CV-5500 YGR, 2012 WL 699465, at *4 (N.D. Cal. Mar. 1, 2012) (finding there was "adequate foundation" for the declaration submitted by the defendant's

11. In the Complaint, Plaintiff seeks, among other things, unpaid minimum and overtime wages, unpaid meal and rest break premiums, unpaid sick pay wages, wage statement penalties, and waiting time penalties during the applicable statutory periods on behalf of herself and the putative class members, as well as a derivative UCL claim. (Exh. A, *passim*.) As set forth below, even when factoring in potential amounts in controversy for less than the total claims asserted, the amount in controversy still well exceeds the $5 million threshold for CAFA removal.[4] *See* 28 U.S.C. § 1332(d).

### 1. Relevant Class Member Data.

12. Plaintiff alleges violations of Section 17200 *et seq.* of the Business & Professions Code. A four-year statutory period applies to the class-action claims for meal/rest premiums and unpaid wages when the complaint pleads a derivative Unfair Competition ("UCL") claim. Cal. Bus. & Prof. Code § 17208 ("Any action to enforce any cause of action pursuant to this chapter shall be commenced within four years after the cause of action accrued"); *Cortez v. Purolator Air Filtration Products Co.*, 23 Cal. 4th 163, 178-179 (2000) (the four-year statute of limitations applies to any UCL claim, notwithstanding that the underlying claims have shorter statutes of limitation). Here, the second through fourth causes of action assert such damages, and therefore the statute of limitations of four years applies to those allegations. (Exh. A, pp. 12-13, ¶¶ 67-80).

13. Upon careful review of Defendant's records[5] over the Relevant Period, Defendant employed 7,136 individuals[6] as PCMs. (Kumpinsky Decl. ¶7).

---

human resources director regarding "the numbers of employees, pay periods [sic] and average rates of pay during the applicable limitations periods," which was derived from a compilation of "information that is kept in the normal course of business," and relying on the declaration to find that the defendant had met its burden to establish the amount in controversy in excess of CAFA's jurisdictional threshold). Here, defendant submits the declaration of the human resources director, and the declaration of its well qualified expert in data analytics, Ariel Kumpinsky, as to the amount in controversy.

[4] In alleging the amount in controversy for purposes of CAFA removal, Defendant does not concede in any way that the allegations in the Complaint are accurate, or that Plaintiff is entitled to any of the monetary relief requested in the operative Complaint. Nor does Defendant concede that any or all of the current or former employees are entitled to any recovery in this case, or are appropriately included in the putative class.

[5] Records that were reviewed by Ariel Kumpinsky and referenced in his declaration were provided by Defendant through its Director of Human Resources Corporate, as set forth in the Declaration of Heather Toro.

[6] Data is still being collected, and for purposes of the four year statute, there are records reviewed back to May 16, 2019 for which all three datasets were reviewed. Even with the lesser time period, there were still 7,136 employees located who are PCMs. For purposes of this removal, that number suffices to fall within the jurisdictional numerosity

14. During the Relevant Period, PCMs worked approximately 102,415 biweekly pay periods in California. (*Id.*)

15. During the Relevant Period, the PCMs earned an average of over $15.88 per hour. (Kumpinsky Decl., ¶20).

16. Within the four-year statute of limitations applicable to the Second through Fourth Causes of Action based on the March 23, 2023 filing date of the Complaint, and data covering the period May 16, 2019 to March 23, 2023, 7136 PCMs worked 565,303 shifts or 3,175,661.10 hours. (*Id.,* at ¶13).

17. Within the one-year statute of limitations applicable to the Fifth, and Sixth Causes of Action, based on the March 23, 2023 filing date of the Complaint, and data covering the period March 23, 2022 to April 8, 2023, there were identified 3,062 putative class members worked 37,639 biweekly pay periods. (*Id.,* at ¶¶8, 28, 30).

18. Within the three-year statute of limitations applicable to the Seventh Cause of Action for waiting time penalties, based on the March 23, 2023 filing date of the Complaint, and data covering the period March 23, 2020 through April 8, 2023, there were identified 4,272 PCMs who were terminated. (*Id.*, at ¶¶ 9, 16, 25).

19. Given that the exposure generated by the analysis yields an exposure well over the $5 million jurisdictional limit, the removal omits analysis of the First Cause of Action for alleged overtime claims, the Fourth Cause of Action for failure to pay all sick time, and the Eighth Cause of Action for UCL Violations, but Defendant points out that the exposure is even higher were these allegations included in the analysis.

**2. Meal Period Liability Adds $1,022,703.76 to the Amount in Controversy.**

20. Plaintiff's Second Cause of Action alleges that violations of Labor Code §§226.7, 512, and Civil Code §§3287(b) and 3289 occurred when "…Defendants [sic] failed in their affirmative obligation to provide all of their hourly non-exempt employees, including, Plaintiff and

---

requirements of CAFA.

members of the Class [sic], with all required meal periods in accordance with the mandates of the California Labor Code and applicable Wage Orders." (Exh. A, p. 12, ¶¶68, 70; *see also id.*, at pp. 6-7, ¶¶20-21).  In addition, Plaintiff alleges in the Complaint that "Defendants [sic] have not paid an additional hour of pay at the "regular rate of pay" to Plaintiff and Members of the Class [sic] at their respective regular rates of pay for each violation." (*Id.*, p.12, ¶69).  Further, earlier in the Complaint, Plaintiff alleges that "[a]s a result of Defendants' [sic] uniform meal period policies/practices and operational requirements, Plaintiff and other non-exempt employees were often unable to take timely and uninterrupted 30-minute first meal periods before the end of the fifth hour of work" and also "were not allowed … to take a mandated and timely second meal period before the end of the tenth hour of work…." (Exh. A, p. 6, ¶20).

21. If an employer fails to provide an employee a meal period as required, the employee may recover one additional hour of pay at the employee's regular rate of compensation for each work day that the meal or rest period is not provided.  Cal. Labor Code § 226.7.  Plaintiff seeks unpaid meal period premiums under Cal. Labor Code § 226.7 on behalf of herself and the putative class.  (Exh. A, p.18, ¶¶ 5-6, Prayer for Relief.)

22. The Complaint does not allege the number of meal periods that were not provided to Plaintiff or the putative class members.  Plaintiff's alleges only that the frequency of purported meal period violations was "at all relevant times" and a result of a uniform policy and procedure. (Exh. A, p. 6 ¶ 20).  Where Plaintiff alleges a systematic deprivation of rights, and the plaintiff has alleged a "uniform" policy and practice, it is appropriate to assume a 100 percent violation rate in calculating the amount in controversy.  *See Amaya v. Consolidated Container Co.*, No. 2:15-cv-03369-SVW-PLA, 2015 WL 4574909 (C.D. Cal. July 28, 2015) ("[C]ourts have generally found the amount in controversy satisfied where a defendant assumes a 100% violation rate based on allegations of a 'uniform' illegal practice (or other similar language) and where the plaintiff offers no evidence rebutting this violation rate."). Even though Defendant could have relied on a 100 percent violation rate, it conservatively applied a violation rate of 20% of shifts worked that are greater than five hours (Kumpinsky Decl., ¶19), during the relevant four-year statute of limitations.  To obtain the potential exposure rate, the number of shifts worked more than five hours were

multiplied by the potential violation rate and rounded up to the next whole number.  For example, if an employee worked 121 shifts of more than five hours, 25 missed meal premiums were assigned at a 20% violation rate (121 x 20% = 24.2). (*Id.* at ¶ 19). To calculate the value of the missed meal period premium, the number of missed premiums was multiplied by the weighted base rate pay. To continue the example, if the employer worked 121 shifts of more than five hours, 25 missed meal periods would be assigned (121 x 20% = 24.2, rounded up to 25). (*Id.* at ¶19).  Finally the average hourly wage rate paid to Plaintiffs was used to determine the value of the missed meal break premium.  (*Id.* at ¶20).  In the example, that would be 25 missed meal breaks at the class average weighted base pay rate of $15.88 or $397.00.  $15.88 is actually the class average weighted base rate applicable to this issue.  (*Id.* at ¶15.) At the $15.88 rate, the amount of missed meal period premiums in controversy during the Relevant Period in this case is $1,022,703.76 (64,402 missed meal periods X $15.88). (Kumpinsky Decl., ¶¶18-21).

### 3. <u>Rest Period Liability Adds $1,594,383.76 to the Amount in Controversy.</u>

23. In her Third Cause of Action, Plaintiff alleges that Defendant failed to provide putative class members with rest breaks or premium payment in lieu thereof.  (Exh. A, p. 7, ¶¶ 22-23, and pp. 12-13, ¶¶71-75).  Plaintiff further alleges the following with respect to her rest break claims:

- "…Plaintiff and other non-exempt employees were also not provided with 10 minutes of net rest period time for every 4 hours worked, or major fraction thereof…" (*Id.* at p.7. ¶ 22).
- "…[I]n light of the stringent work demands imposed by Defendants [sic], Plaintiff and other non-exempt employees were often unable to take complaint [sic] and uninterrupted rest periods of 10 minutes time for every 4 hours worked, or major fraction thereof." (*Id.*).
- "On occasions when Plaintiff and other non-exempt employees worked in excess of 10.0 hours in a shift, Defendants failed to authorize and/or permit a third mandated rest break." (*Id.*).
- "…[E]ach time non-exempt employees were unable to take a compliant rest period, Defendants failed and continues to fail to adequately pay rest period premium payments at the

1  "regular rate of pay"…." (Exh. A, p. 7, ¶23; *see similar allegation at* p. 13, ¶74).

2  • "Due to their unlawful rest period policy/practices and operational
3  requirements/work demands, Defendants did not authorize and permit Plaintiff and members of the
4  Class to take all rest periods to which they were legally entitled." (Exh. A, p. 13, ¶ 73).

5  Plaintiff's allegations could reasonably be interpreted to suggest that Defendant never
6  complied with the law. (Exh. A, p. 7, ¶¶ 22-23, and pp. 12-13, ¶¶71-75).

7  24. Under California law, employers must provide at least one 10-minute rest period for
8  shifts 3.5 hours or greater. *Brinker Rest. Corp. v. Sup. Ct.*, 53 Cal. 4th 1004, 1029 (2012).
9  Employees who are not provided the opportunity to take a rest period are entitled to one hour of
10  premium pay for each day that the opportunity to take a rest period is not provided. *United Parcel*
11  *Serv. Wage & Hour Cases*, 196 Cal. App. 4th 57, 63 (2011). Rest period claims are properly
12  considered in determining the amount in controversy. See, e.g., *Arias v. Residence Inn by*
13  *Marriott,* 936 F.3d 920, 926-27 (9th Cir. 2019).

14  25. When determining the amount placed in controversy by a plaintiff's allegations
15  regarding a common "policy and practice of" rest period violations, a 20% violation rate that is
16  uniformly applied across all members of the putative class period is both reasonable and
17  conservative. *See Rodriguez v. USF Reddaway, Inc.,* 2022 WL 3274345, at *6 (E.D. Cal. Aug. 11,
18  2022) ("the Court finds the 25% violation rate to be reasonable based upon Plaintiff's allegation of
19  Defendant engaging in a 'pattern and practice' of failing to pay employees for missed rest breaks");
20  *see also Sanchez v. Abbott Lab'ys*, 2021 WL 2679057, at *5 (E.D. Cal. June 30, 2021) ("the Court
21  finds a violation rate of 20% [for a rest period claim] … to be reasonable"); *Kincaid v. Educ.*
22  *Credit Mgmt. Corp.*, 2022 WL 597158, at *4 (E.D. Cal. Feb. 28, 2022) (same); *Olson v. Becton,*
23  *Dickinson & Co.*, 2019 WL 4673329, at *5 (S.D. Cal. Sept. 25, 2019) ("the Court finds that
24  application of a 25% violation rate is reasonable.").

25  26. Additionally, when calculating rest break premiums for purposes of calculating the
26  amount in controversy, courts routinely accept the use of average rates of pay. *Hernandez v.*
27  *Nuco2 Mgmt., LLC*, 2018 WL 933506, at *5 (E.D. Cal. Feb. 16, 2018) (holding that "the average
28  wage of class members during the relevant period is an acceptable method on which to base the

amount-in-controversy calculation"); *see also Coleman v. Estes Express Lines, Inc.*, 730 F. Supp. 2d 1141, 1150 (C.D. Cal. 2010) (approving use of average hourly rate of class members); *Helm v. Alderwoods Grp., Inc.*, 2008 WL 2002511, at *4 (N.D. Cal. May 7, 2008) (holding that "it would have been preferable for defendants to calculate the average hourly wage based on the average wage of all class members").

27. The exposure value was based on an assumed potential exposure rate of 20% of shifts worked that were greater than 3.5 hours. (Kumpinsky Decl., ¶23). For each PCM, the number of shifts of at least 3.5 hours, was multiplied by the potential violation rate and rounded up to the next whole number. (*Id.* at 23). For the 7,136 employees identified in the four year applicable statute of limitations, the total number of missed breaks was calculated at 100,402, and the total missed break premiums would be $1,594,383.76, using the class average weighted pay rate of $15.88 per hour and a 20% violation rate. (*Id.* at ¶24). This is a conservative estimate.

28. Consequently, the amount placed in controversy by the Rest Period Claim is at least $1,594,383.76 ($15.88 x 100,402).

**4. Failure To Provide Accurate Wage Statements Adds $3,610,800.00 to the Amount In Controversy.**

29. Plaintiff alleges in her Fifth Cause of Action that Defendant failed to provide accurate wage statements as required by California Labor Code section 226 *et seq*. (Ex. A, p. 7, ¶¶25-26, pp.14-15, ¶¶ 55-59). Plaintiff's claim for wage statement penalties is wholly derivative of her claims for unpaid minimum, overtime, and premium wages, as well for the alleged failure to provide meal and rest periods. As such, it puts at issue every wage statement for every pay period during the 1-year statutory period from March 23, 2022 to the present. *See, e.g., Gipson v. Champion Home Builders, Inc.*, No. 1:20-cv-00392-DAD-SKO, 2020 WL 4048503, at *8 (E.D. Cal. July 20, 2020) (100% assumed violation rate was reasonable based on reasonable assumption that class members suffered at least one violation of meal or rest break violations per pay period); *Nunes v. Home Depot U.S.A., Inc.*, No. 2:19-cv-01207-JAM-DB, 2019 WL 4316903, at *3 (E.D. Cal. Sept. 12, 2019) (same)). Section 226(e) provides penalties for inaccurate wage statements as follows: the "greater of all actual damages or fifty dollars ($50) for the initial pay period in which a

violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not exceeding an aggregate penalty of four thousand dollars ($4,000)[.]"

30. 3,062 PCMs were identified as provided a wage statement from March 23, 2022 to April 8, 2023. Plaintiff alleges that "[a]s a result of Defendants' [sic] failure to pay Plaintiff and other non-exempt employees for all overtime, meal period premiums, sick pay, vested vacation hours and PTO at the 'regular rate of pay', Defendants [sic] issued wage statements which failed to accurately identify the gross wages earned, the total hours worked, the net wages earned, and the correct corresponding number of hours worked at each hourly rate…." (Exh. A, pp.7-8, ¶ 25). Further, Plaintiff alleges that "Defendants' [sic] failure to comply with Labor Code § 226(a) was knowing and intentional." (Exh. A, p. 14, ¶58). Further, plaintiff alleges that as a result of the failure to comply with the law, "Plaintiff and members of the Wage Statement SubClass are each entitled to recover an initial penalty of $50, and subsequent penalties of $100, up to an amount not exceeding an aggregate penalty of $4,000 per Plaintiff and per every member of the Wage Statement SubClass from Defendants [sic] pursuant to Labor Code § 226(e)." (Exh. A, p. 15, ¶59), Accordingly, Plaintiff has put $4,000.00 of wage statement penalties in controversy, with assumed total allegedly affected pay periods of 37,639 in number, and total alleged Inaccurate Wage Statement Penalties at issue in the amount of $3,610,800.00. (Kumpinsky Decl., ¶¶ 27-28).

### 5. **Failure to Pay Wages Timely Adds $7,221,600.00 to the Amount in Controversy.**

31. Plaintiff alleges in her Sixth Cause of Action a derivative claim that Defendant, in failing to pay all used sick time wages at the "regular rate of pay", "failed to fully pay Plaintiff and other Class Members as required by Labor Code § 204." (Exh. A, p.15, ¶63). Further, Plaintiff alleges that "Defendants' [sic] pattern, practice, and uniform administration of its corporate policy of illegally delaying employee's compensation… is unlawful and entitled Plaintiff and the other Class Members to recover, pursuant to Labor Code §218, the unpaid balance of the compensation owed to them …and any applicable penalties, attorneys' fees, and interest ….pursuant to Labor Code §§210 and 218.5." (Exh. A., p. 15, ¶64). Plaintiff asserts that Labor Code section 210 permits the plaintiff to collect a penalty of $100 for any initial failure to timely pay each

employee's full wages, and $200 for each subsequent violation, plus 25% of the amount unlawfully withheld. (Exh. A, p.15, ¶62).

32. Assuming a single failure to timely pay wages during the Applicable Period is conservative. The Complaint contends Defendant's failure to timely pay all wages is derivative of Defendant's purported failure to pay used sick pay. (Exh. A, p. 14, ¶58). Therefore, according to Plaintiff's theory, Defendant allegedly failed to timely pay putative class members all wages due for each pay period during the entire Applicable Period.

33. To calculate the potential exposure for these purposes violations, 3,062 PCMs were identified who were provided a wage statement from March 23, 2022 through April 8, 2023. (Kumpinsky Decl., ¶30). A penalty of $100 was assigned for the first pay period for each PCM employee, and $200 was assigned as a penalty for each subsequent pay period.  (*Id.* at ¶29). The calculation does not factor in Plaintiff's allegations of a "willful" violation of Labor Code Section 204, which makes available "two hundred dollars ($200) for each failure to pay each employee, plus 25 percent of the amount unlawfully withheld". (Exh. A, p.15, ¶62; (Kumpinsky Decl., at ¶30).  *See also* Cal. Labor Code § 210(a)(2).

34. The calculation and review of records revealed that 37,639 pay periods were affected in total. (*Id.* at 30).  Using this conservative calculation, Plaintiff's claim for failure to timely pay wages during employment yields a potential exposure of $7,221,600.00. (*Id.* at ¶31).

### 6. Waiting Time Penalties Violations Alleged Add $11,437,716.10 to the Amount In Controversy.

35. Plaintiff's Seventh Cause of Action alleges that "Defendants [sic] willfully failed to pay Plaintiff and the Waiting Time Penalty Class for overtime, PTO, sick pay and meal and rest period premium wages due at the "regular rate of pay" upon termination or separation from employment with Defendants as required by Labor Code §§ 201 and 202." (Exh. A, p.16, ¶69).

36. Section 203 penalties "accrue not only on the days that the employee might have worked, but also on nonwork days," for up to 30 days, and the accrual of these penalties "has nothing to do with the number of days an employee works during the month." *Mamika v. Barca*, 68 Cal. App. 4th 487, 492-93 (1998). Because the "targeted wrong" addressed by Section 203 is "the

delay in payment" of wages, that wrong "continues so long as payment is not made"; therefore, "[a] proper reading of section 203 mandates a penalty equivalent to the employee's daily wages for each day he or she remained unpaid up to a total of 30 days." *Id*. at 493.

37. Here, Plaintiff claims that Defendant owes penalties to her and the purported class at least in part as a result of its purported failure to pay all wages due and owing during their employment. (Exh. A, p.16, ¶69). In light of that fact, it is clear that Plaintiff's theory is that such alleged unpaid wages still have not been paid to her. It is, therefore, reasonable to calculate the amount in controversy for this claim based on a 30-day penalty calculated at her daily wage rate. *See Quintana v. Claire's Stores, Inc.*, 2013 WL 1736671, at *6 (N.D. Cal. Apr. 22, 2013); *Stevenson v. Dollar Tree Stores, Inc.*, No. CIV S-11-1433 KJM, 2011 WL 4928753, at *4 (E.D. Cal. Oct. 17, 2011).

38. Based on a review of Defendant's business records, approximately 4, 272 PCMs have separated employment with Defendant from March 23, 2020 to April 8, 2023. These employees earned an average base hourly rate of $15.88 and worked an average shift length of 5.62 hours. (Kumpinsky Decl., at ¶25).

39. Defendant's calculation of Plaintiff's claim for waiting time penalties for failure to timely pay all wages upon termination results in exposure of $11,437,716.10 (5.62 average hours worked per day x 30 days x $15.88 average rate of pay x 4,272 former employees).

40. Consequently, the amount placed in controversy by the waiting time penalties claim is $11,437,716.10.

**7. Attorneys' Fees**

41. Plaintiff seeks attorneys' fees on behalf of the putative class. (Exh. A, pp.17-18, Prayer for Relief). Attorneys' fees are properly included in the amount in controversy. *See, Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 700 (9th Cir. 2007) (statutorily-mandated attorneys' fees are properly included in the amount in controversy for CAFA jurisdiction purposes).

42. In class action litigation, courts routinely grant attorneys' fees awards that range from 25% to 33% of the settlement or verdict amount. *See, e.g., Hanlon v. Center for Auto Safety*,

150 F.3d 1011, 1029 (9th Cir. 1998) ("This circuit has established 25% of the common fund as a benchmark award for attorney fees"); *In re Activision Securities Litigation*, 723 F. Supp. 1373, 1378 (N.D. Cal. 1989) (awarding 30% attorneys' fee award and compiling cases where range of attorneys' fee award ranged between 25% and more than 40%). Accordingly, including attorneys' fees of 25% is reasonable when calculating the amount in controversy. *See, e.g., Giannini v. Northwestern Mut. Life Ins. Co.*, 2012 WL 1535196, at *4 (N.D. Cal. 2012) (holding that defendant's inclusion of attorneys' fees to satisfy amount in controversy was reasonable where defendants "base this amount by multiplying by twenty-five percent the sum of the amounts placed in controversy by the four claims" asserted by plaintiff.); *Jasso v. Money Mart Express, Inc.*, 2012 WL 699465, at *6-7 (N.D. Cal. 2012) (holding that "it was not unreasonable for [Defendant] to rely on" an "assumption about the attorneys' fees recovery as a percentage of the total amount in controversy" and noting that "it is well established that the Ninth Circuit 'has established 25% of the common fund as a benchmark award for attorney fees.'"). Without attorneys' fees calculated, however, the amount in controversy is well above the jurisdictional value to remove this matter.

43. The amount in controversy for the claims discussed above, excluding attorneys' fees, total **$24,887, 203.62**. Twenty-five percent of this amount is **$6,221,800.91.** The combined total yields an amount in controversy of **$7,472,875.20,** which easily exceeds the five million required to establish federal jurisdiction under CAFA.

**8.      Summary of Amount in Controversy**

44. As set forth above, the allegations in the Complaint satisfies the requisite $5 million for purposes of removal under CAFA:

| **Damages** | **Amount** |
|---|---|
| First Cause of Action for Alleged Unpaid Overtime | **Not included** |
| Second Cause of Action for Alleged Meal Period Violations | **$1,022,703.76** |

14
DEFENDANT GAMESTOP, INC.'S NOTICE OF REMOVAL TO FEDERAL COURT

| | |
|---|---|
| Third Cause of Action for Alleged Rest Period Violations | $1,594,383.76 |
| Fourth Cause of Action for Alleged Failure to Pay Sick Pay | **Not Included** |
| Fifth Cause of Action for Inaccurate Wage Statements | $3,610,800.00 |
| Sixth Cause of Action for Alleged Wage Statement Violations | $7,221,600.00 |
| Seventh Cause of Action for Alleged Waiting Time Penalties | $11, 437,716.10 |
| Eighth Cause of Action for UCL Violations | **Not Included** |
| Attorneys' Fees (25%) | $6,221,800.91 |
| **TOTAL** | **$31,069,887.025** |

The amount shown above is only for the Second, Third, Fifth, Sixth and Seventh Causes of Action. It does not include amounts for the First, Fourth and Eighth Causes of Action. Thus, by only considering five of the plaintiff's eight causes of action, Defendant was able to clearly establish that removal under CAFA is proper under CAFA is proper under 28 U.S.C. §1332(d).

  **C.**  **Any Class Member Is A Citizen Of A Different State Than Any Defendant**.

  45.  For purposes of establishing diversity under CAFA, this Court need only find that there is diversity between one putative class member and the named Defendant. 28 U.S.C. §§ 1332(d)(2), 1332(d)(5)(B) and 1453(a).

    **1.**  **Citizenship of Defendant**

  46.  Defendant was at the time of the filing of this action, and still is, a corporation incorporated under the laws of Minnesota. (Declaration of Mark H. Robinson ("Robinson Decl.") ¶¶ 1-2.) Pursuant to 28 U.S.C. § 1332(c), "a corporation shall be deemed to be a citizen of any

State by which it has been incorporated and of the State where it has its principal place of business." The U.S. Supreme Court established the proper test for determining a corporation's principal place of business for purposes of diversity jurisdiction in *The Hertz Corporation v. Friend*, 559 U.S. 77 (2010). The Supreme Court concluded that the "'principal place of business' is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities." *Id.* at 78. The Court further clarified that the principal place of business is the place where the corporation "maintains its headquarters – provided that the headquarters is the actual center of direction, control, and coordination." *Id.*

47. Defendant's principal place of business and the location where its executive and senior management personnel coordinate its corporate activities is Grapevine, Texas. (Robinson Decl. ¶ 2.)

48. Therefore, at all material times, Defendant has been a citizen of either Minnesota or Texas.

49. There are no other named Defendants in this action. Accordingly, there is no requirement for anyone else to join in this removal. The citizenship of fictitiously-named *"Doe"* defendants is to be disregarded for the purposes of removal based on diversity jurisdiction. 28 U.S.C. § 1441(a).

        **2.**     **Citizenship of Plaintiff and putative class members**.

50. For diversity purposes, a person is a "citizen" of the state in which he or she is domiciled. *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983). A person's domicile is the place he or she resides with the intention to remain or to which he or she intends to return. *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001).

51. Plaintiff alleges that "[a]t all relevant times herein," she "was and currently is a California resident. (Exh. A, p.3, ¶4). Business records demonstrate that she was employed in the state of California. (Declaration of Heather Toro ("Toro Decl."), ¶4). *See Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986) ("place of employment" an important factor weighing in favor of citizenship). Therefore, Plaintiff is a citizen of California.

///

52. Members of the proposed class, who by definition are or were employed in California, are presumed to be primarily citizens of the State of California. *See, Lew* 797 F.2d at 750 ("place of employment" an important factor weighing in favor of citizenship). Thus, even if Plaintiff was somehow not a citizen of California (despite her allegations) and was instead a citizen of Illinois (and there is no evidence that is the case), the hundreds of putative class members, all of whom worked in California (Exh. A, p. 8, ¶29), are also citizens of California.

53. Accordingly, the minimal diversity of citizenship requirements under 28 U.S.C. § 1332(d)(2) are met. Moreover, because Defendant is not a citizen of California, the exceptions to CAFA jurisdiction under 28 U.S.C. § 1332(d)(3) and (d)(4) are inapplicable.

### III. THE PROCEDURAL REQUIREMENTS OF 28 U.S.C. § 1446 ARE SATISFIED

#### A. Timeliness

54. As related above, Defendant's registered agent for service of process was served with the summons and Complaint on April 6, 2023. True and correct copies of the documents served on Defendant's registered agent are attached to this Notice as **Exhibit "A."**

55. While a defendant in a civil action has thirty (30) days from the date it is served with a summons and complaint in which to remove the action to federal court, the time to remove under 28 U.S.C. section 1446(b) does not begin to run until receipt by the defendant, through service or otherwise, of a pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable. *Roth v. CHA Hollywood Med. Ctr., L.P.,* 720 F.3d at 1125; *Harris v. Bankers Life & Cas. Co.*, 425 F.3d at 694; *see also* 28 U.S.C. § 1446(b); *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347-48 (1999). As previously explained in Paragraphs 3 through 6, *supra*, this notice of removal is therefore timely. *See* 28 U.S.C. § 1446(b).

#### B. Procedural Requirements

56. Pursuant to 28 U.S.C. § 1446(a), copies of all process, pleadings, and orders served upon Defendant are attached as Exhibits to this Notice as Exhibit "B".

57. Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served upon counsel for Plaintiff and a copy is being filed with the Clerk of the Superior Court of

California in Butte County and with the Clerk of the Eastern District of California. True and correct copies of the Notice to the Plaintiff and the state court shall be filed promptly.

## IV.  CONCLUSION

58. This Court, therefore, has original jurisdiction over Plaintiff's claims by virtue of the Class Action Fairness Act 28 U.S.C. § 1332(d)(2). This action is thus properly removable to federal court pursuant to 28 U.S.C. § 1441.

59. In the event this Court has a question regarding the propriety of this Notice of Removal, Defendant requests that the Court issue an Order to Show Cause so that Defendant may have the opportunity to more fully brief the basis for this removal.

WHEREFORE, Defendant GAMESTOP, INC. removes the above-action to this Court.

DATED: May 8, 2023

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.

By: _____
Michael J. Nader
Elizabeth D. Rhodes

Attorneys for Defendant
GAMESTOP, INC.